We'll now move to case numbers 21-2083 and 21-2111. In Re Cook Medical, Inc. These are the appeals of Kelly Thompkins and Patricia Boudreaux. We're going to begin with argument first from the appellant, and I'm going to recognize Mr. Kirtley. Good morning. May it please the court, I'm John Kirtley, counsel for appellants Kelly Thompkins and Patricia Boudreaux. Suppose you read in the newspaper this morning that my aunt died yesterday of a stroke. If I told you right now that my aunt died yesterday of a stroke, that tells you nothing about when I learned that she died and what caused her death. You'd need to ask more follow-up questions like, when did you learn your aunt died? How did you learn that your aunt died? Did someone tell you? Who told you? What did they tell you? And so on. In other words, you would need more discovery. This is the situation here. Thompkins and Boudreaux's cases were dismissed because the district court found, based solely on the radiology reports of each plaintiff, that the statute of limitations began running on the date that is recorded in each of the plaintiff's radiology reports, and their suits were not timely filed. We are asking the court to view all of the evidence in the light most favorable to each plaintiff and reverse the district court's judgment dismissing each case. Both cases are a part of the Cook Filter MDL, the IVC Filter MDL. The IVC Filter is a medical device. As with all pharmaceutical MDLs, there are only a handful of cases assigned as bellwether or case-specific discovery cases. Neither of these cases were either of those. In case management order 28, the district court ordered a procedure to allow defendants to seek dismissal of cases based on limitations. The court said that defendants can file a motion, but the order does not say under what rule of procedure. At that point, the plaintiff can dismiss their case, respond setting forth facts, specific facts, or file a motion saying why they cannot adequately respond. Nothing in CMO 28 says that if plaintiffs set forth specific facts in an affidavit, as both plaintiffs here did, that that would automatically convert the defendant's 12C motion to a Rule 56 motion for summary judgment. Let me explore that, Mr. Kirtley. Are you arguing that this couldn't be done or shouldn't have been done, this conversion? The conversion itself can be done but probably should not have been done under these circumstances. A Rule 12C motion to dismiss is based on the pleadings and any documents that are referenced in the pleadings or documents that are matters of public record. For example, 12C is entirely appropriate for an insurance coverage dispute or a contractual dispute. Those are documents that would automatically be attached to any complaint. None of the documents relied upon by the defendants were referenced in any of both plaintiffs' pleadings, and of course none are public records, being medical records. Defendant's master answer is void of any specific facts regarding the accrual of limitations. It just says plaintiff's claims are barred by limitations. The case census sheets do not constitute pleadings. They are nothing more than a tool for discovery. Rule 12C is not an appropriate vehicle to determine the existence of a fact issue. Now in response to each 12C motion to dismiss, both plaintiffs submitted their affidavits saying they had no knowledge before certain dates beyond the dates of their radiology reports of any defects in their IVC filters or that such defects caused any of their injuries. Let's take the step from there. What did they think was happening if the filters were being taken out? The filters wouldn't be taken out if they were working, correct? If I understood you correctly, the filters are designed to be removed. So removal in and of itself would not be sufficient to put anyone on notice that anything was wrong. Now the fact that no depositions were taken in this case is not a problem for the plaintiffs, but the defendants. Defendants have the burden to prove in both cases when the plaintiffs acquired knowledge of their injury and the cause of their injury. In both cases, both the injury and its cause must be known by the plaintiff. When plaintiffs should have known requires something more than just a radiology report. In both Tompkins and Boudreau, when a cause of action accrues is a question of fact. But that is where the similarities of these cases end. Mr. Kirtley, if the district court had converted it to summary judgment as it did here, but then said on the record evidence here, there are simply no undisputed facts that can prove the accrual of the claim. We have genuine disputes of material fact here. No summary judgment for Cook. Do you care at that point that the district court converted it to a Rule 56 motion? If I win the motion, Judge, I do not care. In Tompkins… So then, Mr. Kirtley, is the error the district court's conversion or just an incorrect evaluation of the facts in the record? Judge, I think that the conversion in and of itself, treating this particular case under these facts, is error. But what it really comes down to, and the substance of this issue is, there is no evidence that the defendant presented of when either plaintiff knew that their filter was defective and that was the cause of their injury. Now, in Ohio, in the Tompkins case, that requires that the plaintiff be told by competent medical authority that the plaintiff has an injury that is related to their exposure to the device. In all of Tompkins, Ohio cases cited regarding the accrual of a cause of action for defective medical devices, references consistently made as to when plaintiff was actually informed by their doctor of the probable cause of the injury. Defendants say that in both cases, a fractured filter leg in a radiology report put each plaintiff on notice of their injuries and the cause. In their affidavits, each plaintiff said they had no knowledge of their injury or its cause until the date they both saw a TV ad that explained their potential claims to them. How much time went by before they saw this on television? Judge Mann. I'm sorry, Judge? You can repeat that, Judge. Yeah, how much time are we talking about where they saw something on TV or something that alerted them to what they say the first time they knew about the problem? In Tompkins, it was nine months. And in Patricia Boudreau, it was four months that they filed their complaints. Four months from what? From the date of discovery, the date they saw the ad. Okay, that's four what? How long? Four years? I don't know, Judge. All I'm saying is it testified under oath in an affidavit that they had no knowledge of their injury or the cause of the injury until the date that they saw the ads. And in each affidavit, like I said, the dates are stated in there. And I can tell you that Tompkins' case was filed nine months after she saw the ad, and Boudreau was filed four months after she saw the ad. What's the time period of when they saw the ad from the time that these inserts were made? When they saw the ad, wasn't it several years? Yes, Judge. In Tompkins, the date of implant was December 15, 2008, and she saw the ad November 8, 2016. And Boudreau's implant was February 24, 2012, and she saw the ad December 15, 2017. I'm sorry, that last date was December 15, 2017. That's the last date I said, Judge. If both cases had tried their cases based on evidence similar to what defendants did here, we would be here trying to reverse a directed verdict. The evidence in both cases presents at worst nothing more than a fact issue to be decided by the jury. Want to reserve the remainder of your time? Yes, Judge. All right. The remainder of Mr. Kirtley's time will be reserved for rebuttal, and we'll now hear from the appellee, represented by Mr. Jones. Thank you, Your Honor. It feels odd to be maskless. I'm Bruce Jones, representing the appellees in this case, the Cook defendants here. I want to correct something right away that my opponent said in his oral argument, and that is he said that the plaintiffs in their affidavit stated that they had no knowledge of their injury until they had seen the ad, TV ad. That's not accurate. What the affidavit says, and they're quoted in our brief on page 10, says, Before November 18, 2016, which was the date they saw the ad, I had no knowledge that the Cook Select IVC filter was defective or that it would cause the injuries that I sustained. There's no denial in any of these affidavits that the plaintiffs knew that they were injured as of the date of the removal of their IVC filters. The removals were prompted by, in each case, the fact that they were fractured. The filters were fractured, and the fractures are, in fact, the very injuries the plaintiffs are claiming compensation for here. So as of the date of the removal of the filters, they knew they had issues related to their filters, relating to fractures. They knew that their doctors had recommended removal, and they knew that the filters had, in fact, been removed. That was sufficient to let them know that they had been, that they had suffered the alleged injury of a fracture and to relate that fracture to the IVC filter. That's sufficient to start the statute of limitations running in both. Can we dig into that a little bit? How is that sufficient for them to relate the injury of the fracture to the defectiveness of the filter? Are there not other reasons they could have reasonably assumed? And here we don't have any record evidence from doctors, what doctors told them, what questions they asked, what they learned at the time. Are there other reasons that the medical procedure could have gone awry? Well, the medical procedures did not go awry. The filters were successfully retrieved as they were intended to be. And the standard is not definite proof of causation. The standard is enough of a relationship between the product and the injury to put you on notice that you ought to be investigating. Is it possible that a fracture could result from some cause other than a defect? Yes, if there was a trauma, for example, severe trauma to that area, that could cause a fracture without any claimed defect. Here, however, the removal of the filter itself was sufficient to put them on notice that the filter was related to the injury that they claimed, which was the fracture of the filter. What if, for example, the filter had been implanted incorrectly, or in the case of the plaintiff who had to have the filter removed twice, I think that was Ms. Boudreau, there was medical error in the first attempt at removal, or in the process of removal, the leg breaks off? What in Cook's record shows us there's no dispute as to the link between a defective filter and their removal, as opposed to anything else? Again, that's not the standard, Your Honor. There doesn't have to be any evidence of a defect. There just has to be an evidence of a relationship between the claimed injury and the product. It is sufficient to put you on notice that you ought to be investigating. You can investigate the… I want you to consider the Schmitt decision, Ohio Supreme Court 2018. Is it your position here that under Ohio law, just in Ms. Thompson's case, discovery of the injury alone is sufficient to trigger the statute of limitations? How do you square that with what the Ohio Supreme Court has said? In the Schmitt's case, the court held that the plaintiffs who had CTE, the brain injury, didn't know, they had encountered football injuries, concussions, through the course of their playing at Notre Dame, and they developed, they knew they had immediate injuries from a concussion because you feel it immediately. But there was no evidence that they had any reason to believe that that was going to cause CTE or these severe brain injuries later on. It was only when they were diagnosed. It was a latent injury, which under Ohio law is a reason to use the discovery rule. That is when the doctor, when the plaintiff knew or should have known or should have learned of the injury. Here, there is no claim of a latent injury. This is not a claim that the fracture developed over time. There is no claim of any injury after the removal of the IVC filters. Any injury that the IVC filter caused necessarily occurred before the removal. It's different than Schmitt's where the CTE developed over time and was not known, could not have been known, at the time of the original injuries during college. I read Schmitt as saying you need the injury, and then you need knowledge that there is a link between the defendant's allegedly tortious conduct and the injury. So Schmitt's facts do port onto these facts, and your position is they do not. My position is they do not, and again, I would urge you that the standard is not a connection to the tortious conduct. It's a connection to the product. If you look at the penile implant case or the breast implant case. Schmitt says discovery of physical injury alone is insufficient to start the statute of limitations running if at that time there is no indication of tortious conduct giving rise to a legal claim. Right. The circumstances of Schmitt's differed because of the latent injury issue. Here we don't have that latent injury issue. If you take a look at the breast implant cases, at the penile implant cases, at the cases where there is an immediate, as there is here, an immediate event, what the Ohio courts call a cognizable event, which demonstrates or should demonstrate to the plaintiff that there has been an injury and that there is a link between the injury and the particular product, that is sufficient under the discovery rule. Our position is that the discovery rule doesn't even kick in here because you don't have a latent injury. What other case, aside from this Faxley case that you cite as an intermediate Ohio appellate court case, makes this distinction between latent injury and latent defect? The Braxton case also makes that distinction. It's also a court of appeals case. And the Supreme Court has not? The Ohio Supreme Court? The Ohio Supreme Court in the O. Strickler case back in 1983 did effectively talk about the difference, did address a latent injury in the context of an asbestos case. They didn't make the distinction between latent injury and latent defect that is made in later cases. But it does all trace back to that. Also, the Carter case, which was a district court case out of Ohio, made that same observation about Ohio law that the distinction is between the discovery rule applies when you've got a latent injury, not a latent defect, which is what is being claimed here. The other thing I would point out is that there is absolutely no support offered in plaintiff's briefs for the standard that they urge for the commencement of the statute of limitations. That is, when you see an attorney's ad on TV. There's no authority from Ohio or Colorado. Is that what they're saying? Or are they saying that's when they knew their injuries were linked to the filter being defective? That's what they're saying. They're saying that's when they knew that their injuries were linked to the filter being defective. Right. Not so much that's when they knew they could sue. That's when they knew the filter was defective. Right. So what I'm saying is there is no authority for an attorney ad or an attorney consultation being the commencing date of a statute of limitations. There's nothing from Colorado, Ohio, or any other jurisdiction. In fact, the Olson case out of Colorado, which we cite in our brief, addresses that directly and says no, no, no. You can't base a commencement of a statute of limitations on when you consult with an attorney. That would defeat the whole purpose of the statute. But is that what they're saying here, sir? Are they saying, oh, I didn't know that I could sue because my filter was defective? Or are they saying, oh, I'm just now learning my filter was defective? They're saying both of those things. But they're not saying I didn't know I was injured and I didn't know it was related to the filter. If that was the case, then they certainly could have said so in their affidavits. They're not claiming that. When did they know? I beg your pardon? Judge, may I get on the TV? As far as the removal. Well, they knew of the removals at the time the removals occurred. The removals were prompted by fractures. When did they know the filter was defective? That's irrelevant. When they knew the filter was defective, when they knew the specific legal theory. Is that a legal theory or a fact? That's a legal theory. A defective product unreasonably dangerous is a legal theory for a strict liability or negligence claim. The fact that they knew was they claimed now that they were injured through the fracture of the filter.  At that time, they knew about the relationship between the injury they claimed, which was the fracture, and the product. Just as with the penile implants, just as with the breast implants in these cases, they were on sufficient notice that they had two years to investigate and see if there was anything wrong with the product or anything wrong with the medical procedure or any other reason that might give them a basis for a claim based on that fracture. They didn't do that. Just bear with me one more time so I can really understand your argument. What put Ms. Tompkins, for example, or Boudreau on notice that her filter was defective? The mere removal, you're saying? No, that put her on notice to inquire as to whether or not the filter was defective. You don't need evidence of a defect. In fact, under the law, the quote, the language of one case, that the issue is not the knowledge. I'm sorry. Under Colorado law, the issue is not whether you know a legal theory that will support a cause of action or you know the legal significance of the facts that you have. It's whether or not you have those facts. It's whether you have the essential elements for a claim. That's the Colorado standard. That's correct. Here, an essential element for a negligence claim, negligence per se claim, even a product liability claim is causation, essential. What put her on notice that the filter, a defective filter, caused her injury? Again, I have to disagree with your premise. That is not the requirement. She doesn't need to know that there was a defect. She only needs to know that she was injured and that the injury has a relationship to the product. What put her on notice that the injury has a relationship to the product? Because it was the product that was fractured. How does she know it fractured on its own versus a doctor fracturing it in the course of the procedures? She doesn't. That's why the two years of statute of limitations provides for her to bring her case is there. That's what gives her – once she's on notice, she has a duty to investigate. Two years would have given her the time to investigate whether or not there was something wrong with the filter or whether there was not, whether it was from some other cause. What is it that she knew when they were removed? What did she learn when they removed the – whatever we're calling it, the device? The IBC filters. The – Filters, yes. When did she realize – what happened when those were removed? What did that put her on notice about? It put her on notice of the fact that her doctors had advised to remove the medical filters and that they – in the case of Mrs. Boudreau, in fact, it was so important that when it was failed the first time, they tried a second time, and that there was a potential for something wrong with the filters. That's what put her on notice, and that is sufficient to start the clock running. She doesn't have to – Where are you getting the language in that there was a potential there was something wrong with the filters? Where in the record is that? Well, there was no dispute that there were fractures in both filters, both plaintiff's filters. When I say something wrong with the filter, that's what I'm saying is at that moment the filter was not operating as it was supposed to, and therefore the doctors went in and removed them. That's what I meant by that. So it was when the doctors removed them that – is that the time that – where the time begins to run? That's correct. There are Ohio cases that specifically note that it can't – the statute of limitations for a medical device claim can't arise later than the removal of the device, absent some claim of a latent injury, which we do not have here. To finish up, then? Any further comments? No, thank you, Your Honor. Okay. Thank you, Mr. Jones. Mr. Kirtley, we'll return to you for rebuttal. May it please the Court. I want to briefly touch on and go back a little bit. Again, these filters are designed to be removed. I go into my doctor and he says, well, John, you need an IVC filter put in. Okay. And three months from now, we're going to remove it. Why is that? Well, that's what we're supposed to do. They're just temporary. Okay. So I go back in three months and they remove it. But that's not your argument that happened with Ms. Tompkins or Ms. Boudreaux. That's not my argument, Judge. But I'm just saying that's insufficient to start the clock running because in both cases, both plaintiffs are required to have somebody – well, in Ohio, it's competent medical authority. That's statutory specific. Competent medical authority that the filter is defective in the cause of the injury. I want to briefly touch on the cases that were addressed in Tompkins. First of all, Ohio Revised Code Section 2305.10b1 governs when a cause of action accrues for a medical device. And 10b1 is not mentioned or discussed in either Griffin or Carter that are cited by defendants. Neither of those cases were decided on 10b1. And none of defendants' cases cited were decided on the correct Ohio statute or were factually consistent with this case. In Carter, in the Carter case that was mentioned earlier, that was decided on 10a, not 10b1. They've also cited Baxley. That's a motorcycle defect case. They've also cited Braxton. That's an exploding stove case. And I think mention was made about Griffin under Ohio. In that case, the plaintiff was told by his doctor that the problems were caused by too much fluid in his prosthesis, the medical device. Here, there was no evidence that Ms. Tompkins was ever told anything by any competent medical authority about her potentially defective IVC filter and it being the cause of her injury. Briefly, I just want to touch on the fact that the Norris case we cite, which defendants cite, is favorable and more factually appropriate for our case because in that case, again, the doctor told her. That's what started the running of the statute in that case. The doctor told her implants were causing the problem and informed her that the implants needed to be removed. Again, that's a case where you didn't expect implants to be removed. In conclusion... When did the injury occur? I'm sorry? It seems to me... Can you hear me okay? Yes. Yeah, the injury, I assume, at least I'm looking at it that way, that's when they were removed. They discovered this defect and removed them. Isn't that when the time starts to run? No, Judge, it's when the plaintiff is informed of the fact that... A television ad? Something they saw on TV? Well, we don't know what the doctors told them, if anything. We don't know. There's no factual record on that, so we don't know. What we do know is what they said under oath in their affidavit. Is there any record about when they removed the devices? Yes, Judge, it's in the record of when the devices were removed. But removal, again, in and of itself alone, is insufficient because these filters are designed to be removed. Well, they're designed to be removed when? When there's something wrong with them? No, Judge, as a matter of course. And that, again, is part of the limitation we have on this record. There wasn't sufficient discovery done to be able to develop this record for this result. Well, you're saying it's because the time that went by, it's time to remove the device. Two years or whatever it was. What I'll say to that, Judge, is, again, these devices are designed to be removed. So removal alone is not going to be sufficient on this record to put them on notice that the cause of their injury was the IVC filter and that the filter was defective. Thank you, Mr. Kirtley. May it please the Court. Thank you. Thank you as well, Mr. Jones. The case will be taken under advisement.